

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF AN APPLICATION OF THE UNITED STATES OF AMERICA FOR A WARRANT TO OBTAIN RECORDS, LOCATION INFORMATION, INCLUDING PRECISION LOCATION INFORMATION, CELL SITE INFORMATION, AND OTHER SIGNALING INFORMATION ASSOCIATED WITH THE CELLULAR TELEPHONE HAVING THE NUMBERS (314) 319-9569. | No. 4:14 MJ 3219 NCC<br><br>**FILED UNDER SEAL** |

## AFFIDAVIT

Christopher Flaugher, being duly sworn, deposes and says that he is a Detective with the Saint Louis Metropolitan Police Department and Task Force Officer with the United States Bureau of Alcohol, Tobacco, Firearms, and Explosives, duly appointed according to law and acting as such.

### Introduction

I am a Detective with the Saint Louis Metropolitan Police Department, and have been a member of the department for nine years, and Task Force Officer with the United States Bureau of Alcohol, Tobacco, Firearms, and Explosives, and have been for the last five years. During the course of my career, I have been involved in investigations focused on arson, firearms, and narcotics violations, among others.

The facts alleged in this affidavit come from my own investigation, my training and experience, and information obtained from other investigators and witnesses. As this affidavit is submitted for the limited purpose of establishing probable cause to locate and monitor the

location of a cellular telephone as part of a criminal investigation, it does not set forth all of the my knowledge regarding this matter.

Upon information and belief, and as explained in greater detail below, the Sprint Spectrum cellular telephone bearing number **(314) 319-9569** (hereinafter the "**subject cellular telephone**") has been used, is presently being used, and contains relevant evidence in connection with the commission of offenses involving ongoing violations of, among others, Title 18, United States Code Section 844(i) (hereinafter referred to as "the subject offenses"), by **ROBERT REID**, and others known and unknown.

The present affidavit is being submitted in connection with an application of the Government for a warrant and order authorizing agents/officers of the investigative agency(ies) to obtain location information, including precision location information, cell site location information, and other signaling information, including pen register information from a cell site simulator, in an effort to locate and monitor the location of the **subject cellular telephone**.

Your affiant further states that there is probable cause to believe that the location information associated with the **subject cellular telephone** will lead to evidence of the aforementioned subject offenses as well as to the identification of individuals who are engaged in the commission of those criminal offense and related crimes.

### Investigation and Probable Cause

**A.    November 6, 2014, Proffer Session.**

On November 6, 2014, members of the Saint Louis Metropolitan Police Department conducted a federal proffer session with confidential source (and the source's legal counsel). Prior to the proffer session, the confidential source indicated to law enforcement that the confidential source wished to provide information to authorities regarding the arson of the Quick

Trip store located at 9420 West Florissant, Ferguson, Missouri 63136. The arson occurred on August 10, 2014, and was well known to authorities.

During the November 6 proffer session, the confidential source stated that he/she was present with a male subject known to the confidential source as "Rob Reid, a/k/a/ Lil Rob" on August 10, 2014, in the area of West Florissant Avenue in Ferguson, Missouri. The Quick Trip property was broken into and REID was one of many individuals inside the property stealing items. REID later possessed what is commonly referred to as a "Molotov Cocktail." REID threw the Molotov Cocktail onto the roof of the Quick Trip property. The Quick Trip property caught fire and significant fire damage resulted to the property. Sometime after committing the arson, the confidential source advised that REID was also involved in the stealing of items from Walmart (10741 West Florissant) and Hibbett Sports (10990 New Halls Ferry Road), both within Ferguson, Missouri and the general vicinity of the Quick Trip.

Prior to the arson, the confidential source observed REID taking a picture or pictures of the Molotov Cocktail with his mobile phone. Following the arson, the confidential source observed a video of the arson and incident on REID's mobile phone.

The confidential source described REID as being approximately five feet, ten inches in height with a thin build. The confidential source stated that REID drives a gray SS Trailblazer. REID's mobile phone number is (314) 319-9569 (the "**subject cellular telephone**"). According to the confidential source, it is this mobile device that contains the picture(s) of the Molotov Cocktail and video(s) of the Quick Trip arson. The confidential source also indicated that REID is routinely armed, carrying a. 40 caliber handgun on his person.

**B.      Post-November 6 Proffer Session.**

Based upon the November 6 proffer session, law enforcement undertook additional

3

investigation to follow-up on the information provided by the confidential source. Among other things, law enforcement investigated the **subject cellular telephone**. The investigation revealed this **subject cellular telephone** to be associated with REID, a black male, date of birth October 19, 1985. REID provided the **subject cellular telephone's** number to law enforcement during an April 15, 2014, arrest. The **subject cellular telephone** has been confirmed to be an active phone with Sprint Spectrum being the carrier. During the same arrest, REID provided an address of 769 Laredo, Saint Louis, Missouri 63138. With this information, law enforcement authorities were able to locate a photograph of an individual with the same name and birthdate that was associated with REID:



C.  **November 12, 2014, Proffer Session.**

On November 12, 2014, law enforcement officials conducted a second proffer session with the same confidential source.   At that time, the officials provided the confidential source with the photograph of an individual with the same name and birthdate that was associated with REID. The confidential source positively identified REID as the person depicted.

The confidential source was also shown a series of still photographs collected from several different sources located on the internet that were posted depicting individuals inside and outside the Quick Trip before, during, and after the August 10, 2014, arson.   In each still photograph, the confidential source identified the individual wearing a black t-shirt, blue shorts, blue tennis shoes, and a white scarf-like garment over his nose, mouth and neck as REID.   One such still photograph positively identified as REID follows:



### D. Post November 12 Proffer Session.

Based upon the confidential source's positive identification of REID as the individual wearing a black t-shirt, blue shorts, blue tennis shoes, and a white scarf-like garment over his nose, mouth and neck, law enforcement conducted further analysis of video footage available through the internet to locate and observe actions taken by REID on August 10, 2014. Among other things, one such video captures REID exiting the Quick Trip carrying what appears to be carton(s) of cigarettes. Video also memorializes REID approaching the Quick Trip from the area of the gas pumps carrying some type of bottle, consistent with the confidential source's prior statement that REID possessed, photographed, and then threw a Molotov Cocktail onto the Quick Trip's roof.

On November 11, 2014, a Saint Louis Metropolitan Police Department detective conducted surveillance 769 Laredo, Saint Louis County, Missouri (which is the address REID provided at the time of his April 15, 2014 arrest). The detective observed a gray colored SS Trailblazer (as identified by the confidential source as belonging to REID) parked in the driveway. The vehicle possessed Missouri license plates HK2-Z1N. During the surveillance, the detective observed a black male subject matching REID's physical description enter the driver's side of the vehicle and depart the residence. Investigation into Missouri license HK2-Z1N determined that those plates are registered and issued to REID at the address of 769 Laredo, Saint Louis, Missouri 63138 for a 2006 Chevy Trailblazer vehicle.

E.  **The Subject Cellular Telephone.**

Probable cause exists to believe that the **subject cellular telephone** contains evidence related to the arson of the Quick Trip on August 10, 2014, including, but not limited to, one or more pictures of the Molotov Cocktail prior to its use to commit arson and one or more videos memorializing REID use to the Molotov Cocktail to intentionally set fire to the Quick Trip on August 10, 2014.  As a result, the precise location of the **subject cellular telephone** is of particular importance to law enforcement to permit law enforcement to locate the **subject cellular telephone**, prevent destruction or alteration of its content, and conduct a comprehensive investigation into it, its content and any items of evidentiary value.

The investigation has clearly demonstrated that the **subject cellular telephone** contains evidence and was being used in connection with the commission of offenses involving ongoing violations of Title 18, United States Code, Section 844(i) (the subject offense).  It is critical that the investigative team be able to locate and monitor the movements of the **subject cellular telephone** thereby assisting in the seizure of the phone -- particularly should such seizure be made in connection with the arrest of REID for his commission of the Quick Trip arson.  Your affiant believes that the requested authorization would be a valuable asset in achieving the overall goals of the investigation.

## Investigative Considerations and Techniques

Based on my knowledge, training, and experience, as well as information provided by investigators with specialized experience relating to cellular telephone technology, I am aware of the following facts and considerations:

A.  Wireless phone providers typically generate and retain certain transactional information about the use of each telephone call, voicemail, and text message on their system.

Such information can include log files and messaging logs showing all activity on a particular account, such as local and long distance telephone connection records, records of session times and durations, lists of all incoming and outgoing telephone numbers or other addressing information associated with particular telephone calls, voicemail messages, and text or multimedia messages.

  B. Wireless phone providers also typically generate and retain information about the location in which a particular communication was transmitted or received. For example, when a cellular device is used to make or receive a call, text message or other communication, the wireless phone provider will typically generate and maintain a record of which cell tower(s) was/were used to process that contact. Wireless providers maintain information, including the corresponding cell towers (i.e., tower covering specific geographic areas), sectors (i.e., faces of the towers), and other signaling data as part of their regularly conducted business activities. Typically, wireless providers maintain records of the cell tower information associated with the beginning and end of a call.

  C. Because cellular devices generally attempt to communicate with the closest cell tower available, cell site location information from a wireless phone provider allows investigators to identify an approximate geographic location from which a communication with a particular cellular device originated or was received.

  D. Wireless providers may also retain text messaging logs that include specific information about text and multimedia messages sent or received from the account, such as the dates and times of the messages. A provider may also retain information about which cellular handset or device was associated with the account when the messages were sent or received. The provider could have this information because each cellular device has one or more unique

identifiers embedded inside it. Depending upon the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Station Equipment Identity ("IMEI"). When a cellular device connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower in order to obtain service, and the cellular antenna or tower records those identifiers.

E. Wireless providers also maintain business records and subscriber information for particular accounts. This information could include the subscriber's full name and address, the address to which any equipment was shipped, the date on which the account was opened, the length of service, the types of service utilized, the ESN or other unique identifier for the cellular device associated with the account, the subscriber's Social Security Number and date of birth, all telephone numbers and other identifiers associated with the account, and a description of the services available to the account subscriber. In addition, wireless providers typically generate and retain billing records for each account, which may show all billable calls (including outgoing digits dialed). The providers may also have payment information for the account, including the dates and times of payments and the means and source of payment (including any credit card or bank account number).

F. Providers of cellular telephone service also typically have technical capabilities that allow them to collect and generate more precise location information than that provided by cell site location records. This information is sometimes referred to as E-911 phase II data, GPS data or latitude-longitude data. In the Eastern District of Missouri, such information is often

9

referred to as "precision location information" or "PLI" data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by attempting to triangulate the device's signal using data from several of the provider's cell towers. Depending on the capabilities of the particular phone and provider, E-911 data can sometimes provide precise information related to the location of a cellular device.

In addition to records and signaling information from cellular providers, it is also sometimes possible to locate and monitor the movements of a cellular device by directly monitoring signals from the device itself. Such monitoring is accomplished by using a specific form of pen register, which is referred to herein as a cell-site simulator. In particular, a cell-site simulator mimics, to a degree, the activities of a cell tower. Once the general location of the **subject cellular telephone** is identified (e.g., using cell site location records or E-911/precision location information), a cell-site simulator can be used in the vicinity of the **subject cellular telephone** to detect radio signals that are emitted automatically at the time the **subject cellular telephone** is turned on, and periodically thereafter as long as the phone remains on, regardless of whether a call is being made, to communicate with the cellular infrastructure, including cell towers. These signals contain identifying numbers for the telephone (*e.g.*, the telephone number and Electronic Serial Number ("ESN") or International Mobile Subscriber Identification ("IMSI") number). The investigative agency(ies) can use these cell-site simulator techniques to attempt to identify the location from which the **subject cellular telephone** is operating. The techniques do not intercept any content of communications, but rather search for signals emitted by the **subject cellular telephone**, which are identified through its identifying numbers (which are already known to law enforcement through other means). Once the **subject cellular telephone's** signals

are identified (typically, through the use of a cell-site simulator, which can be used only when it is in the general proximity of the **subject cellular telephone**), the strength of the signal emitted by the **subject cellular telephone** can be analyzed to ascertain the general direction and location of the signal, which can assist in identifying the general location from which the **subject cellular telephone** is operating.

In order to locate the **subject cellular telephone** and monitor the movements of the phone, the investigative agency(ies) may need to employ one or more techniques described in this affidavit and in the application of the government. The investigative agency(ies) may seek a warrant to compel Sprint Spectrum, any telecommunication service providers reflected in Attachment 1 (herein incorporated by reference), and any other applicable service providers, to provide precision location information, including Global Position System information (if available), transactional records, including cell site location information, and pen register and trap-and-trace data. The investigative agency(ies) may also install and use its own pen register and trap-and-trace devices, including a cell-site simulator, in an effort to locate and monitor the movements of the **subject cellular telephone**.

None of the investigative techniques that may be employed as a result of the present application and affidavit require a physical intrusion into a private space or a physical trespass. Electronic surveillance techniques such as pen register and cell site location monitoring typically have not been limited to daytime use only. Furthermore, the criminal conduct being investigated is not limited to the daytime. Therefore, the fact that the present application requests a warrant based on probable cause should not limit the use of the requested investigative techniques to daytime use only. Accordingly, the investigative agency(ies) requests the ability to employ these investigative techniques at any time, day or night.

## Conclusion

Based on the above information, there is probable cause to believe that the **subject cellular telephone** is being used to store and maintain evidence of the August 10, 2014, arson and the requested authorization would provide the location of the **subject cellular telephone** and relevant evidence of the arson. There is likewise probable cause to conclude that locating and monitoring the movements of the **subject cellular telephone** will lead to the relevant evidence concerning violations of Title 18, United States Code, Section 844(i).

11/14/2014
DATE

Christopher Flaugher
Detective, Saint Louis Metropolitan Police Department
Task Force Officer, United States Bureau of Alcohol, Tobacco, Firearms and Explosives

Sworn to and subscribed before me this 11/14/14 day of November, 2014.

NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE
Eastern District of Missouri

12